ALEXANDER McGREGOR v. THE ESTATE OF JAMES G.
ROSS, DECEASED.

| 96 | 103 |
|-----|------|
| 101 | 575 |
| 96 | 103 |
| 103 | 610 |
| 96 | 103 |
| 105 | 296 |
| 96 | 103 |
| 125 | 166 |
| 96 | 103 |
| 147 | 529 |

*Contract—Construction—Breach—Damages.*

1. A provision in a logging contract by which the contractor agrees to cut, under the direction of a scaler to be furnished by the log-owner, and haul and bank on a certain river, all of the timber on certain lands by April 1 of the following year, and deliver the logs into the main jam at the mouth of the river during the driving season of that year, does not give the log-owner the right to order the contractor to stop cutting logs when, in the opinion of the scaler, he has as many cut as he can get out and deliver during said driving season.

2. A mere *request* by the log-owner to the contractor to quit cutting logs, if acquiesced in by the contractor, does not amount to a breach of the contract on the part of the log-owner; but a *direction* by the log-owner to stop cutting, which the contractor obeys under protest, amounts to a breach, entitling the contractor to the consequent damages.

If, after such direction, the contractor continues cutting timber, but is prevented from completing the same by reason of such breach, the log-owner, in a suit brought by the contractor upon the contract, can recoup the damages sustained by reason of the failure of the contractor to deliver the logs so cut, such failure not being occasioned by the prior breach by the log-owner.

Error to Marquette. (Stone, J.) Argued April 12, 1893. Decided June 16, 1893.

Claim against the estate of decedent. Defendant brings error. Reversed. The facts are stated in the opinion.

*Clark & Pearl,* for appellant.

*E. J. Mapes,* for plaintiff.

MONTGOMERY, J. The plaintiff recovered below upon a claim originally presented before commissioners on claims.

appointed in the matter of the estate of Ross. The claim filed was for the price of cutting, putting in, and running a quantity of pine saw-logs during the logging season of 1887–88, under a written contract.

The contract provided for the putting in of the logs standing upon certain described lands, estimated to amount to about 5,000,000 feet. The agreement on the part of the plaintiff was to cut, skid, haul, and bank said timber upon a branch of the Escanaba river, and below the forks, on section 25, or above the forks, on section 24, township 44 N., range 28 W. The timber was to be banked on or before the 1st of April, 1888, and was to be delivered by the plaintiff into the main jam at the mouth of said river during the driving season of that year, and with all diligence and dispatch. For the services to be performed by the plaintiff, Ross agreed to pay the sum of $5.50 per 1,000 feet,—$1.50 per 1,000 as the logs should be skidded in the woods, $2.75 per 1,000 when the logs were banked at one of the places mentioned, and $1.25 per 1,000 when the logs should be driven into the main jam at the mouth of the river. The contract contained this provision:

" Said party of the second part, in consideration of the sum of $5.50 per thousand feet, board measure, agrees to cut, log, skid, and haul to bank of branch of said Escanaba river, at the place before described, all the pine timber on said above-described lands, *to be cut under the direction of a scaler furnished by said first party,* being about 5,000,000 feet."

The contract also designated the length and manner of cutting the timber, and provided that the scaler was to scale the logs either in the woods or on the bank of the river, at the option of Ross, by a scaler furnished by him.

The plaintiff offered testimony tending to show that after the execution of this contract he entered upon the performance of the same,—got in supplies, built his camp, and started to cut and skid, and make his logging roads;

that he then cut the main roads leading from the banking ground into the timber, and completed the same between the middle and the last of January; that in building the roads it was necessary first to cut out and grade them, ready to put on a snow plow when the snow came. Plaintiff commenced hauling on the 16th or 17th of January, and at this time had from 60 to 90 men at work, with 9 teams. A portion of this timber was standing upon lands detached from the main body, and this detached portion was the first cut and skidded, and was also the first timber hauled to the banking ground. On the 30th of January, plaintiff purchased 6 additional teams, which were at once placed by him upon the work. On the 14th of February he had banked, according to the report of the scaler, 1,879,477 feet. The plaintiff also introduced evidence tending to show that prior to this time Ross' agent, Mr. Connolly, had told the plaintiff to stop cutting and skidding; that plaintiff refused to do so; that, while he was absent for a few days, Connolly peremptorily directed the work to cease. The testimony tended to show that Connolly told the plaintiff's foreman, the latter part of January, to quit skidding, and that Cameron, the scaler, also forbade him soon after, stating that such were his instructions from Mr. Connolly. Cameron testified:

"I was satisfied that they could get in all the logs there was, but this particular time he [referring to Connolly] made them stop, so I stopped them." .

Plaintiff further introduced testimony tending to show that when he was stopped he let all his sawyers and swampers go. At the time the plaintiff was stopped from cutting, there remained upon the land from 800,000 to 1,100,000 feet, which was not cut subsequently by him.

1. The counsel for the estate contend that under the contract, giving the right to Ross, through the scaler, to

direct the manner of cutting the timber, under the provision of the contract that the cutting of the timber should be under the direction of the scaler furnished by the first party (Ross), he had the right to stop the cutting when the scaler should be of the opinion that the plaintiff would not be able to get out any more timber than was already cut. The learned circuit judge instructed the jury, in substance, that this provision did not confer this right upon Ross, but that the authority of the scaler only related to the manner of cutting; that under the contract the plaintiff had the right to proceed in his own time to cut the timber, he being bound by the provision of the contract to get the timber out so as to run it during the season. We think this the correct interpretation, and that there is no error here.

2. It is further contended by the counsel for the estate that there was in fact no breach of the contract by Ross, and that plaintiff could have proceeded to cut the timber had he seen fit to do so; that the direction to stop cutting did not amount to a prevention. The circuit judge instructed the jury, in substance, that if the statement made by the agent of the deceased to the plaintiff was in the nature of a request, and that the plaintiff acquiesced in such request, and stopped cutting, this would not amount to a breach of the contract; but that, on the other hand, if the plaintiff was directed to stop work under his contract, and did stop work under protest, or objected to it, this would amount to a breach of the contract, entitling the plaintiff to recover damages for such breach. In this there was no error. See 3 Amer. & Eng. Enc. Law, p. 904, and cases cited.

3. The plaintiff, after the alleged breach of the contract, proceeded to cut a further quantity of logs, but, as the jury found, was unable to complete the entire cutting, because of the breach. He did, however, cut, haul, skid,

and put in the stream some 4,000,000 feet. Some 500,000 feet of these logs were not run during the season, and the estate sought to recoup damages for the failure to run out these logs. The jury were instructed by the circuit judge that—

"If Ross first broke this contract, so that there was a breach of it on his part, the plaintiff had a right to go on, and perform so much as he saw fit, and no more, and recover what it was worth for what he did. He would not be bound even by the contract price there. So it all depends on who broke the contract in the first regard. It does not lie in the mouth of a defaulter in performing a contract to say that the contract is evidence of the true value of the labor performed."

We think the court was in error in giving this instruction. When the deceased committed a breach, the plaintiff was privileged to adopt either one of two courses: He could abandon further work under the contract altogether, and sue to recover the price of work already performed, and whatever damages he had already sustained because of being prevented from completing the contract; or he could continue, under the contract, to do so much of the work as he was permitted to do, and recover damages for the interruption. But in case he did so there is no reason why he should not be bound by the terms of the contract, so far as he did attempt its performance, and responsible for any breach of condition not dependent upon the neglected performance of the other. In other words, the law does not outlaw a party who has broken a contract in any particular, or deprive him of having the benefit of provisions inserted in such contract for his protection, in any case where the other party proceeds under the contract, and where the breach may be compensated in damages, and where the neglect of performance by the plaintiff is not induced by the act of the one guilty of the first default. This does not militate against the rule that,

where covenants or agreements are dependent, the one who has committed the first breach is ordinarily without remedy under the contract. In the present case the running of the logs already cut and hauled, and those which the plaintiff was, subsequent to the breach, permitted to cut and haul, was not dependent upon the putting in of that portion of the timber which the plaintiff was prevented from cutting by the wrongful act of Ross.

In *Milldam Foundery v. Hovey,* 21 Pick. 417, there was an agreement, on the one hand, to furnish water power, and, upon the other hand, to manufacture certain articles. There was an interruption of the mill power, which was construed to be the breach of a condition precedent which would authorize the defendant to break off from his contract. Chief Justice Shaw, at page 444, lays down the following rules, which we think applicable to the present case:

"Such breach of the condition could only excuse the defendant from such part of the contract requiring the use of mill power as remained to be performed when the breach of condition happened." Further: "Although such suspension or interruption of the mill power might be construed to be the breach of a condition precedent which would warrant the other party to break off, and excuse the further performance of the contract, yet it is at his option to do so, or to waive the breach and proceed with the contract; and, if he continues in the performance of the contract until the impediment is removed and the power re-established, this amounts to a waiver of the forfeiture, and the party will no longer be excused thereby from the further performance of the contract."

In 2 Pars. Cont. 678, it is said:

"Generally, where one fails to perform his part of the contract, or disables himself from performing it, the other party may treat the contract as rescinded; but not if he has been guilty of a default in his engagement, for he cannot take advantage of his own wrong to defeat the contract; nor if the failure of the other party be but par-

tial, leaving a distinct part as a subsisting and executed consideration, and leaving also to the other party his action for damages for the part not performed."

In *Franklin v. Miller,* 4 Adol. & E. 599, it is said:

"It is a clearly-recognized principle that if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to."

See, also, *Boone v. Eyre,* 1 H. Bl. 273, note *a*.

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.