WILLIAM H. WILKINSON *vs.* BLOUNT MANUFACTURING COMPANY.

Suffolk.    December 1, 2, 1896. — October 23, 1897.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Breach — Waiver — Rescission — Equity — Specific Performance — Decree — Damages.*

A waiver of one breach of a contract cannot be considered a waiver of a subsequent breach.

*It seems*, that if one party to a contract, immediately after he receives notice from the other party of a rescission of the contract for breach of a covenant to pay for goods within a time limited therein, pays what is due, and the former receives the money, this will be a waiver of the breach, unless he gives notice that he does not intend to waive his right to terminate the contract.

At the hearing of a bill in equity for specific performance of a contract, by which the plaintiff covenanted to pay for goods furnished by the defendant within

sixty days from their delivery, and which provided that "upon the breach of any of the covenants herein contained by either party, the other party may terminate and rescind this contract," it was found that the plaintiff, in a letter in reply to a notice by the defendant that he rescinded the contract for breach of the covenant above named, "inclosed a bank check for the amount then due and payable, according to the books of both parties," for all goods not paid for which had been delivered to him sixty days previously; but it was not found that the defendant received the check, or what became of it, nor did it appear whether, if he received it, he took it conditionally or unconditionally. *Held, that there was not enough shown to amount to a waiver.*

One party to a contract, by committing a breach of it, does not lose the right to rescind the contract for a previous breach committed by the other party while both were acting under it as an existing contract, and the latter, who does not seek to rescind it, cannot maintain a bill in equity for specific performance of the contract. BARKER, J., dissenting.

BILL IN EQUITY, filed September 6, 1895, for specific performance of a contract, and for an injunction. Hearing before Barker, J., who entered a decree, denying the prayers for specific performance and for an injunction, and retaining the cause for the purpose of assessing damages for breach of the contract by the defendant, and of enforcing payment thereof; and both parties appealed to the full court. The facts appear in the opinion.

*C. H. Hanson,* for the defendant.

*H. W. Chaplin,* (*G. B. Upham* with him,) for the plaintiff.

LATHROP, J. 1. The first question presented in this case is whether on the facts found it can be said, as matter of law, that the defendant had, on June 26, 1895, waived the right to rescind the contract into which it had entered with the plaintiff on December 7, 1889. By the terms of the contract, the plaintiff covenanted to pay for the goods furnished by the defendant within sixty days from their delivery. It was further provided, "Upon the breach of any of the covenants herein contained by either party, the other party may terminate and rescind this contract." On June 26, 1895, the defendant gave written notice to the plaintiff that it rescinded the contract for breach of this covenant. It appears from the findings of fact, that at this time the plaintiff was indebted to the defendant for goods delivered under the contract during the months of January, February, March, and April, and for which the plaintiff had failed to pay within sixty days from delivery. It further appears that the defendant had, from time to time, up to and on April 13, 1895,

accepted, without protest or reservation, payment for all goods delivered to the plaintiff before January 1, 1895. It is only as to these goods so settled for that the decree states that the defendant had waived its right to rescind the contract. We do not understand that the decree in favor of the plaintiff proceeds upon the ground of waiver; but, as the plaintiff contends that there was a waiver, we will briefly consider the question.

As the goods were to be furnished from time to time, there was imposed a continuing liability to pay for each lot within sixty days from delivery thereof. Undoubtedly if the defendant received payment for any lot after the amount was due, it could not rescind the contract for the default in paying for that lot. But a waiver of one breach cannot be considered a waiver of a subsequent breach.

In *Thompson* v. *Knickerbocker Ins. Co.* 104 U. S. 252, 259, an action on a policy of insurance, the defence was that the policy had ceased to be of effect because an annual premium, for which in part a note had been given, had not been paid, the policy containing a clause that the omission to pay the annual premium on the day named should cause the policy to be void. The plaintiff filed a replication, setting up a usage and custom of the defendant not to demand punctual payment, but to give thirty days' grace; that the defendant had repeatedly done so with the plaintiff and others, and that this led the plaintiff to rely on such leniency in this case. This replication was held to be bad, and it was said by Mr. Justice Bradley, in delivering the opinion of the court: " This was a mere matter of voluntary indulgence on the part of the company, or, as the plaintiff herself calls it, an act of ' leniency.' It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come." See also *Bleecker* v. *Smith*, 13 Wend. 530, 534; *Williams* v. *Dakin*, 22 Wend. 201, 209; *Hunter* v. *Daniel*, 4 Hare, 420; *Muston* v. *Gladwin*, 6 Q. B. 953; *Flower* v. *Peck*, 1 B. & A. 428.

Further, on the question of waiver, the bill alleges that, upon receipt of the notice sent by the defendant rescinding the contract for non-payment of the goods within sixty days, the plaintiff immediately wrote and delivered to the defendant a letter,

enclosing a check for the full amount due, " which payment was duly received and receipted for by the defendant." This is denied by the answer. It would seem that if the plaintiff, immediately after he received the notice, paid what was due, and the defendant received the money, this would be a waiver of the breach, unless it gave notice that it did not intend to waive its right to terminate the contract. See *Tuttle* v. *Bean,* 13 Met. 275; *Collins* v. *Canty,* 6 Cush. 415; *Kimball* v. *Rowland,* 6 Gray, 224; *Miller* v. *Prescott,* 163 Mass. 12; *Hammacher* v. *Wilson,* 26 Fed. Rep. 239, 241; *Platt* v. *Fire Extinguisher Manuf. Co.* 59 Fed. Rep. 897.

But the decree does not proceed upon this ground, and the finding of fact is merely that the plaintiff in his letter in reply to the notice " inclosed a bank check for the amount then due and payable, according to the books of both parties, for all such door checks not paid for as had been delivered to him sixty days or more previously." It is not found that the defendant received the check, or what became of it. Nor does it appear whether the defendant, if it received it, took it conditionally or unconditionally. What is stated is not enough to amount to a waiver.

2. The decree further states that the defendant, on June 27, 1894, made an agreement with the Corbin Company of Connecticut, with reference to said patents and said patented articles, and that the making of this was a breach of the defendant's contract with the plaintiff, and caused him damage; that, on June 13, 1895, the defendant made an agreement with reference to said patents and said patented articles and said Corbin Company contract, with the Yale and Towne Manufacturing Company of Connecticut, and that the making of this agreement by the defendant was a breach by the defendant of its contract with the plaintiff, and caused the plaintiff damage; and that, by committing these breaches of its contract of December 7, 1889, for any breach thereof by the plaintiff committed after the defendant had itself broken the agreement, the defendant on June 26, 1895, had no right to rescind said agreement.

It appears by the findings of fact that the goods contemplated by the contract of December 7, 1889, were door checks; and that there was upon the market a competing door check known as

the Corbin door check, manufactured by P. and F. Corbin, a Connecticut corporation. The Corbin check involved some of the material features of the Blount check; and during a considerable time, down to June 27, 1894, litigation was in progress between the defendant and the Corbin Company as to the patents used in their respective door checks. On June 27, 1894, the defendant, without the plaintiff's knowledge, entered into a written contract with the Corbin Company, and the provisions of that contract were carried out by the parties thereto; and under the arrangement thus made, the Corbin Company was allowed by the defendant to sell the Corbin door check in New England, in competition with the sales there by the plaintiff of the Blount check, to the damage of the plaintiff.

By the terms of the agreement between the defendant and the Corbin Company, the parties agreed to share between them the profits arising from the manufacture and sale of liquid door checks. The defendant also, reciting that it was the owner of certain letters patent, licensed the " Corbin Company, its successors and assigns, during the life of this agreement, to make, use, and sell the inventions and improvements described and claimed in said letters patent, and each of them."

By the terms of the agreement between the plaintiff and the defendant, dated December 7, 1889, the defendant granted to the plaintiff, for the term of ten years, " the exclusive right and license within and throughout the States of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, and Connecticut to sell for use and resale said patented articles and all improvements hereafter made upon the same, except that the right of said licensee to sell said patented articles to railroad companies for use in passenger cars shall not be exclusive nor confined to the New England States, but shall be a concurrent right with the party of the first part [the defendant], and all of its other licensees to sell said patented articles to railroads for use in passenger cars in any part of the United States whatsoever."

The defendant further agreed not knowingly to sell any of said patented articles to any other person for sale or for use in New England, except for the use of railroad companies in passenger cars, and to use every effort to prevent the sale

of said patented articles in New England by others than the plaintiff.

The contract by the defendant with the Yale and Towne Manufacturing Company, dated June 13, 1895, constitutes the latter its exclusive sales agent, both in the United States and foreign countries, on and after July 1, 1895. The agent agrees to purchase from the defendant, on September 1, 1896, all its machinery, tools, patterns, and fixtures. The eleventh clause of the agreement is as follows: "That said Yale and Towne Manufacturing Company shall treat equitably all the existing arrangements between the Blount Company and its present selling agents which may be in effect on and after July 1, 1895, but that said Blount Company, if requested by said Yale and Towne Company, shall terminate any of said contracts whenever such action is permissible by the terms of any contract, or because of a violation of its terms by any of said agents."

The presiding justice also made this finding of fact: "It had been agreed between the defendant and the Yale and Towne Manuacturing Company, before the contract was actually executed, that the defendant should in some way or other get rid of the plaintiff by cancelling his contract."

So far as the contract made by the defendant with the Yale and Towne Manufacturing Company is concerned, it is difficult to see wherein the making of it constituted any breach of the contract entered into between the plaintiff and the defendant. While the making of it apparently antedates, by a few days, the giving of the notice of rescission, yet the contract was not to take effect until the first of the next month; and if the defendant had a right to rescind the contract made with the plaintiff, the making of the contract with the Yale and Towne Manufacturing Company is immaterial to the case. Moreover, before the date of this contract, the plaintiff had broken his contract with the defendant, by not paying for the goods within sixty days of their delivery to him.

If, however, we assume, without deciding, that these contracts of the defendant with the two corporations constituted breaches of the contract between the parties to this action, and would have justified the plaintiff in rescinding the contract, we know of no principle of law which warrants the conclusion reached

by the decree, that the defendant has lost the right to rescind for a breach committed by the plaintiff, while both parties were acting under the contract as an existing contract. In fact, the plaintiff at the present time does not seek to rescind the contract, but to have it specifically enforced. If the defendant cannot rescind for the reason that there has been a previous breach of the contract by itself, then the contract must be enforced, without any right of rescission by the defendant, and it would be compelled to furnish goods to the plaintiff, and its only remedy would be an action at law for the price. This would not be the contract made by the parties.

It is found that the plaintiff did not have knowledge of the Corbin contract until after the filing of the bill in this case. But he has not since sought to rescind the contract on this account, or to recover damages for this alleged breach of the contract of December 7, 1889. He still seeks specific performance of the original contract, which he has broken. As he has taken no action on account of the Corbin contract, there is no reason why the defendant should not be allowed to enforce the covenants contained in the contract between the parties, leaving the plaintiff to his action at law to recover damages for any breach of any covenant on the part of the defendant, if he is entitled to any, as to which we express no opinion. See *Standard Button Fastening Co.* v. *Harney*, 155 Mass. 507; *Standard Button Fastening Co.* v. *Ellis*, 159 Mass. 448; *Dingley* v. *Oler*, 117 U. S. 490, 503; *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255, 264; *Foss-Schneider Brewing Co.* v. *Bullock*, 59 Fed. Rep. 83, 87, 88; *McGregor* v. *Ross*, 96 Mich. 103; *Robinson* v. *Lake Shore & Michigan Southern Railway*, 103 Mich. 607; *Avery* v. *Bowden*, 5 E. & B. 714.

In the opinion of the majority of the court, the decree must be set aside, and the bill dismissed.             *So ordered.*

BARKER, J. The evidence is not reported, but the decree states certain facts which were found by the justice who heard the case, and these should be taken to be true in dealing with the decree. One of these is, that the making of the contract with the Corbin Company, on June 27, 1894, was a breach of the defendant's contract with the plaintiff which caused him

damage. Another is that the making of the Yale and Towne contract of June 13, 1895, was a breach of the defendant's contract with the plaintiff, which caused him damage.

Then it is said in the decree that by these breaches of the defendant's contract "the defendant lost its right to rescind the agreement of December 7, 1889, for any breach thereof by the plaintiff committed after the defendant had itself broken the agreement, *and, on June 26,* 1895, *had no right to rescind said agreement.*" The first part of this declaration is no doubt too broad. If the agreement is to be enforced, it must be enforced with all its terms. But the decree does not enforce the agreement, but retains the bill for the purpose of awarding damages for the breaches found. The suit is in equity, and in equity the defendant had no right to rescind on June 26, 1895, as stated in that part of the decree in italics above. The situation was this. The defendant, having given to the plaintiff the sole right to sell its goods in New England, secretly gave to others the same right, and, to make this fraud upon the plaintiff successful, attempted to exercise its power of rescission. To my mind, there could be no stronger case for the exercise of the power of a court of equity to prevent the consummation of a fraud, and that power should be used in this case. If the agreement did not involve the carrying on of a factory and an extensive business which a court practically cannot order, I should say that the plaintiff might have specific performance. As it is, the attempted rescission should be annulled, because part of an attempted fraud, and the plaintiff's damages should be assessed.