## THE AMERICAN PUBLISHING AND ENGRAVING COMPANY, Appellant, v. JAMES WALKER, Respondent.

### St. Louis Court of Appeals, March 4, 1901.

1. Contract: AN ACCEPTED ORDER, BINDING ON THE PARTIES. Respondent authorized in writing the appellant company to furnish for his exclusive use, cuts and reading matter weekly for one year and thereafter, until notified in writing to discontinue same, for which he agreed to pay seventy-five cents and postage for each cut, and twenty-five cents and postage for each duplicate at the end of each month. The order was accepted by appellant company. *Held*, that it constituted a contract binding on both parties.

2. ————: PROPOSAL IN WRITING: IF ACCEPTED, SUFFICIENT. A proposal to do or not to do a certain thing for a consideration, in writing signed, assented to by some positive act of the non-signing party, constitutes a valid contract.

3. ——— : ——— : ——— : NOT UNILATERAL, WHEN. If one of the parties to a writing does not sign it, but the said party accepts a performance of its provisions, there is no merit in his objection that it is unilateral.

4. ——— : ——— : MEASURE OF PLAINTIFF'S DAMAGE. The measure of plaintiff's recovery is the profit it should have realized, had it been permitted to continue to furnish the cuts to the end of the year.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

Reversed and remanded.

*Heffernan & Heffernan* for plaintiff.

The plaintiff solicited the order, the defendant signed it, and the plaintiff accepted it and complied with its terms. This constitutes the written contract in evidence. When parties have put their contracts in writing, in the absence of accident, fraud or mistake, it is conclusively presumed that the whole engagement, and the extent and manner of their undertaking was reduced to writing. State ex rel. v. Hoshaw, 98 Mo. 358; Hempler v. Schneider, 17 Mo. 258; Lindell v. Rokes, 60 Mo. 249; New Lindell Hotel Co. v. Bailey, 3 Mo. App. 598; Girard v. St. Louis C. Co., 46 Mo. App. 79; Welsh v. Edmonson 46 Mo. App. 282. A written contract, signed only by party, held to be the contract of the other, having assented to such. Berner v. Bagnell, 20 Mo. App. 543.

*T. J. Delaney* for respondent.

By the terms of the alleged contract, the defendant was alone bound. The plaintiff was not bound to do anything. The paper is merely a proposition from Walker to the company. The company could discontinue sending cuts at any

time and defendant would have no redress. It is therefore unilateral, and not having been wholly executed by plaintiff, and defendant having paid in full (including postage) for all cuts received, had the right to discontinue the shipment. The plaintiff, although it begun performance, might stop at any time. Jones v. Durgin, 16 Mo. App. 370; Tucker v. Woods, 12 Johns (N. Y.) 190; Turnpike Co. v. Coy, 13 Ohio St. 84-92; Lees v. Whitcomb, 2 Mo. 86; Sykes v. Dixon, 9 A. & E. 693; 'James v. Williams, 5 B. & Ad. 1109; Branch Bank v. Steele, 10 Ala. 915.

GOODE, J.—The appellant sued the respondent on the following written instrument:

"It is agreed that the American Publishing and Engraving Company will not be held responsible for any provisions not embodied in writing herein, and that this contract can not be cancelled without the written consent of the said company.

"The American Publishing and Engraving Company, Syndicate Department, 146 to 150 Nassau street, and 2 to 6 Spruce street, New York: You are hereby authorized to furnish the undersigned for my exclusive use one cut and no duplicate and reading matter weekly to illustrate the merchant tailor business in the city of Springfield, State of Missouri, only, for the term of one year from the commencement of service, and until notified in writing to discontinue same, for which I agree to pay to your order at New York, the sum of seventy-five cents and postage for each cut, and twenty-five cents and postage for each duplicate at the end of each calendar month; matter sent is not to be duplicated to any other concern in my line of business in Springfield, Missouri.

(Name) "James Walker,

"Address 220 College street,

"Dated February 26, 1898.                    Springfield, Mo."

The evidence shows, without conflict, that one of the appellant's travelling salesmen took the above order from the respondent on the date it bears, and sent to his principal, immediately. Thereupon, the financial standing of the respondent was investigated, which being found satisfactory, the appellant sent him an acceptance of the order, together with a copy of it. Cuts and reading matter were forwarded to the respondent as called for in the contract each week to May 14, 1898, when the respondent mailed the appellant a draft for the price of the cuts and reading matter he had received to that time and directed that no more be sent to him because he could not make arrangements with his home papers to use them. Notwithstanding this instruction of the defendant, plaintiff continued to send cuts to the end of the year, that is, to February 26, 1899. It shipped fifty-two cuts, testified to be worth seventy-five cents each, or a total value of $39, and expended $2.16 for necessary postage. The defendant, as above stated, paid $7.90 on this account and the action was to recover the balance.

The only defense interposed was that the contract was unilateral, not binding on the plaintiff and, therefore, not binding on the defendant. It should be remarked that he declined to receive the advertisements forwarded to him after he had notified the appellant not to send any more.

The testimony shows that the publishing and engraving company had engaged to pay its soliciting salesman thirty-three per cent commission for securing the order. On receipt of the notice from the defendant to ship no more cuts, the company informed him that it could not release him from the contract unless he would reimburse it for the commission which it had paid this salesman on the unexpired portion.

We regret that we are unable to concur with the learned judge who tried the case below, in his construction of the foregoing contract. Whether the act of the plaintiff's agent in

taking the order from the defendant would amount to an agreement by it to comply with the contract which would be binding and effective, is unnecessary to decide. The testimony shows, without dispute, that a formal acceptance of the order was sent to the defendant as soon as it was received, and performance duly begun. Beyond question, this made the contract binding on both parties according to its terms. Granting, for the sake of argument, that Walker might have withdrawn his order before it was accepted, he could not lawfully do so afterwards, unless one party to an agreement may abrogate it at his pleasure. He makes no complaint of the kind of performance rendered by the plaintiff and presumably the cuts and reading matter were satisfactory. It can not be tolerated, then, that he should terminate his liability or the plaintiff's rights simply because his home newspapers refused to use the advertisements. Plaintiff was in no way responsible for that. If the contract was valid and binding from the first, or became so upon acceptance by the company, it was valid and binding to the full extent of its terms; that is, the company was bound to furnish the advertising matter for one year and thereafter until notified to cease by the defendant, and the latter was bound to pay for it for at least one year. He could not construe the agreement as terminable when he would; for it may be that the plaintiff would not have been willing to enter into a contract for less than one year.

The signatures of both parties to a written agreement are not always indispensable to its validity. In fact, a large portion of the commercial affairs of to-day are transacted upon orders or proposals signed by one party which becomes effective and binding when acted upon by the other. It would introduce inextricable confusion into business transactions to hold that agreements so made might be dispensed with at the caprice or will of one of the parties. United States v. Carlisle, Fed. Cases 14274; Mastin v. Grimes, 88 Mo. 478; Wordsworth v. Wilson,

11 La. Ann. 402; Hallock v. Comstock Inc., 26 N. J. Law
268; Muscatine Waterworks v. Muscatine Lumber Co., 83 Ia.
112, 52 N. W. Rep. 108.    The later authorities show an in-
creasing liberality on this point, doubtless for the reason that
trade usages have dictated a relaxation from the former strict-
ness.    The circumstance that a contract lacks the signature of
one of the parties to it, is by no means controlling in determin-
ing whether or not it is mutual.    It may be unilateral for that
reason, but many written agreements signed by one side are
obligatory.    The requirement of mutuality is but a branch of
the doctrine that a contract, to be recognized by the law, must
be supported by a consideration.    When a consideration is
wanting, either because one of the parties did not assent to the
contract, or because, though he did assent he was not obliged on
his part to do anything, the contract is without mutuality or
unilateral.    It is not legally a contract at all.    On the other
hand, although not signed by the party suing on it, if it is clear
either from his words or actions that he assented to it from the
first, he must comply with, and may enforce, its obligations.
The assent of a non-signing party, it is true, must be signified
by some positive act—a mere mental resolution is not enough.
Lungstrass v. German Ins. Co., 48 Mo. 201.    But many overt
acts may be evidence of assent.    Vogel v. Peacoc, 157 Ill. 339;
Fairbanks v. Meyers, 98 Ind. 92; Griffin v. Bristle, 39 Minn.
456; Dows v. Morse, 62 Ia. 231; Grove v. Hodges, 55 Pa. St.
504; Flannery v. Dechert, 13 Pa. St. 505; Botkin v. McIn-
tyre, 81 Mo. 567.    It has been held that where a person
made a written proposal to do certain work which was signed
by him alone, proof that it was made in the presence of the de-
fendant and assented to by him is sufficient to warrant the find-
ing that the contract was complete.    Berner v. Bagnell, 20 Mo.
App. 543; Murphy v. Murphy, 22 Mo. App. 18.    If one of
the parties to a writing does not sign it, but the said party ac-

cepts a performance of its provisions, there is no merit in his objection when sued upon the instrument that it was unilateral. Stone v. Pennock, 31 Mo. App. 544.

The agreement in question, after the performance of it had been begun, was manifestly obligatory on the plaintiff for the full term of one year, and if it failed to furnish matter to defendant as stipulated for that term, it was responsible in damages. This being true, it was equally binding on him for the same period. In Lewis v. Mutual Life Ins. Co., 61 Mo. 534, a contract was construed whereby the plaintiff agreed to become the general agent of the defendant to work exclusively for it for five years. There were various other provisions, such as that he should furnish a full corps of energetic subagents, which need not be noticed. The company went out of business during the time of the contract and, when sued by the plaintiff to pay for his services during the full period, claimed that it did not bind itself to continue in business for five years and that its inability to execute the whole term was no breach. It was conceded the company did not covenant directly to carry on business for any certain time. Nevertheless, it was held bound for the whole period. The language of the opinion is applicable to the present controversy: "It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied." The same doctrine was laid down in Glover v. Henderson, 120 Mo. 367.

The authority chiefly relied on by the respondent is Jones v. Durgin, 16 Mo. App. 370. But that case expressly recognizes the validity of instruments, like the one in question, and

their binding force and effect on both parties. There was no proof, however, of any formal acceptance by the plaintiffs as there is here, and they were held properly nonsuited because their undertaking was so vague and indefinite as to be incapable of enforcement and insufficient to make them responsible in damages if they broke it. But here, the services which the plaintiff company agreed to render Walker are clearly and unmistakably stipulated by the very language of the contract. Such executory agreements, when acted on, are always held binding. If it is clear that the minds of both parties have met, they stand on the same footing as any other contract and are to have the same principles of law applied to them. Cary v. McIntyre, 7 Colo. 173; Robson v. Mississippi Logging Co., 61 Fed. 193; Stone v. United States, 94 U. S. 76; Horn v. Hansen, 22 L. R. A. 617; 7 Am. and Eng. Ency. of Law. (2 Ed), 115; Great Northern R. R. Co. v. Witham, 9 C. P 16; Wise v. Ray, 3 G. Greene 430; Mason v. Dechert, 77 N. Y. 595, 28 Am. Rep. 190; Kinder v. Brink, 82 Ill. 376.

It does not follow, however, that the plaintiff is entitled to recover the full price of the advertising matter sent after it was notified to stop sending it. On the defendant's refusal to accept any more cuts, it should have foreborne to ship them. Under such circumstances the party notified has no right to continue to perform the contract and thus enhance the damages. The measure of the plaintiff's recovery is the profit it should have realized had it been permitted to continue to furnish the cuts to the end of the year. 7 Am. and Eng. Ency. of Law, (2 Ed.), 153; Moline Scale Co. v. Bend, 52 Ia. 307; Danforth v. Walker, 37 Vt. 239; Ward v. Thomas, 64 N. Y. 107; McGregor v. Ross, 96 Mich. 103; Collins v. Delaport, 115 Mass. 159.

The judgment is reversed and the cause remanded, in which disposition of it all the judges concur.