396    SUPREME COURT OF WISCONSIN.    [Apr.

Milwaukee Coke & Gas Co. v. Central Wis. S. Co. 183 Wis. 396.

MILWAUKEE COKE & GAS COMPANY, Appellant, vs. CEN-
TRAL WISCONSIN SUPPLY COMPANY and another, Re-
spondents.

*January 18—April 8, 1924.*

*Sales: Entire output of mine: Definiteness of agreement: Appeal:
Questions not brought up for review: Breach by seller:
Measure of damages.*

1. A contract to purchase the entire production of a developed
   and operating coal mine in which the output was approxi-
   mated, and it was entirely possible for the mine to produce
   large quantities of coal and deliver the same as provided
   in the contract, was valid, being capable of performance.
   p. 400.
2. In an action by the buyer because of the seller's failure to
   deliver, the defendant corporation alleged that its treasurer
   was not authorized to contract on its behalf. The verdict
   of the jury and the judgment of the court that the signing
   of the contract was by defendant's treasurer, who acted with
   apparent authority, and that the buyer reasonably relied
   thereon in executing the contract, not being excepted to by
   defendant and not brought up by it on cross-appeal, the
   validity of the execution of the contract stands as a verity.
   p. 400.
3. Where a direction of the buyer to the seller that the coal be
   consigned to a third person was within the contract provi-
   sions, the question whether the buyer received a profit from
   its dealings with such consignee was not properly a question
   in the case.    p. 400.
4. The contract being to sell the entire output of the mine for a
   named period and such output being capable of being made
   certain, the measure of the buyer's damages upon the seller's
   repudiation was the difference between the contract price and
   the market price.    p. 401.
5. The fundamental idea in allowing damages for breach of con-
   tract is to put the plaintiff in as good a position as he would
   have been but for the breach.    p. 401.
6. While the buyer was entitled to profits on instalments of coal
   as they should have been delivered, it must accept deductions
   therefrom on instalments which would have been delivered
   under the contract where it is shown to a reasonable certainty
   that such deliveries would have been made and that such
   losses would have resulted if the contract had been per-

formed; and there should be deducted the loss which the buyer would have sustained had production at the mine continued until the expiration of the contract.   p. 402.

ROSENBERRY, J., dissents in part.

APPEAL from a judgment of the circuit court for Dodge county: C. M. DAVISON, Circuit Judge.   *Reversed, with directions.*

The appeal is from a judgment in favor of the plaintiff for six cents damages and costs.

The defendant, pursuant to sec. 3049a, Stats., asked for a review and reversal of that part of the judgment which adjudges that the plaintiff recover of the defendant the costs. The plaintiff and defendant entered into a contract as follows:

### *"Coal Contract.*

"This agreement, entered into at Milwaukee, Wisconsin, this 26th day of January, 1920, between the *Central Wisconsin Supply Company,* party of the first part, and the *Milwaukee Coke & Gas Company* and *or* the Steel and Tube Company of America (M. A. Hanna & Company of Cleveland, Ohio, Agents), party of the second part, witnesseth:

"The party of the first part agrees to sell, furnish, and deliver to the party of the second part, and the party of the second part agrees to buy as follows:

"*Quantity.*   Entire production of mine of Kentucky Beaver collieries located in Floyd county, Kentucky, during period from March 1, 1920, to March 31, 1921, both dates inclusive.   It is estimated that the output of this mine will run from two to six cars per day between now and May 1, 1920, and between May and October output will probably be eight to ten cars per day, depending upon progress of development work.

"*Quality.*   Elkhorn run of mine coal.

"*Route.*   Long Fork Railroad and connections to dock at Toledo, Ohio, or such other routing as buyer or its agents may from time to time specify.

"*Price.*   Three dollars and fifteen cents ($3.15) per net ton of 2,000 pounds, f. o. b. cars, mine.   This price based upon the present scale of wages paid to miners; any increase

in this wage scale to be added to price, any decrease to be deducted from this price.

"*Terms.* Payments to be made for coal the 25th of the second month following date of cargo or railroad bill of lading, when shipments made via all-rail.

"*Delivery.* Party of the first part agrees to ship this coal covered by this contract on orders furnished by the party of the second part as fast as coal can be produced and loaded on cars, and shipped on the orders by the first party.

"*Expiration.* March 31, 1921.

"*Weights.* Settlement to be made on basis of cargo or railroad bill of lading as shown by manifest of car number and the weight of each car furnished by the initial carrier and accompanying said bill of lading and evidencing the coal covered by the same.

"*Guaranty.* Said coal shall be properly cleaned and prepared and shall conform to the following analysis which is hereby guaranteed:

"*Ash.* Not over —— per cent.

"*Sulphur.* Not over —— per cent.

"*Contingencies.* It is agreed that party of the first part shall not be held liable for damages resulting from failure to deliver all of said coal hereunder, if prevented or obstructed by combinations, strikes, hindrances, turnouts, or accidents at the mines or on the railroad, provided such conditions are of a general nature on the Long Fork Railroad, and said second party shall not be held liable for failure to receive such coal or any part thereof if such failure is due to accident at its unloading dock or at its plant or to restricted operation of such plant because of business conditions, or to the inability of second party's agents to float such coal, but second party shall in any event be obligated to accept coal in transit, where same shall have been shipped pursuant to shipping instructions of said second party or its agents.

"*Note.* This order is subject to all rulings and regulations of the United States Fuel and Railroad Administration.    CENTRAL WISCONSIN SUPPLY COMPANY,

"By S. P. Gladney, Treas.

"THE MILWAUKEE COKE AND GAS CO.

"Signed in triplicate.    By H. J. Schlesinger."

The defendant repudiates the authority of *S. P. Gladney,* treasurer, who signed the contract in behalf of the defend-

ant. The action was brought in behalf of the plaintiff to recover damages for breach of the contract on the defendant's part. It is undisputed that the defendant did refuse to carry out the provisions of the contract.

The case was submitted to a jury and the jury found, in substance, that *Gladney* did not have authority from the defendant to enter into the contract on its behalf, and did not have express authority to make contracts for sale of coal in behalf of the defendant. But the jury also found that *Gladney* had, for a month or so prior to the execution of the contract, participated substantially in the management of the coal department of the defendant company, to the knowledge of the company's manager; that at the time of the execution of the contract he had apparent authority to negotiate and make sales of coal in behalf of the defendant; that plaintiff relied thereon; and that the defendant's manager knew of *Gladney's* negotiations with plaintiff for the sale of such coal. Upon these findings of the jury the lower court held in substance that the contract was valid, and from that decision the defendant has not appealed. The main question on appeal, then, is over the amount of damages. The jury found no damages and the court assessed nominal damages, and from this assessment the plaintiff appeals, and the defendant gave notice under sec. 3049a, Stats., that it would ask a review of so much of the judgment as granted costs to the plaintiff.

For the appellant there was a brief by *Fawsett, Smart & Shea* of Milwaukee, and oral argument by *Edmund B. Shea* and *Edward M. Smart*.

For the respondents there was a brief by *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *M. L. Lueck*.

The following opinions were filed February 12, 1924:

CROWNHART, J. It is the contention of the plaintiff that the contract called for the delivery of the total output of the Kentucky Beaver collieries, located in Floyd county, Kentucky, from March 1, 1920, to March 31, 1921, at the

400    SUPREME COURT OF WISCONSIN.    [Apr.

Milwaukee Coke & Gas Co. v. Central Wis. S. Co. 183 Wis. 396.

agreed price of $3.15 per ton f. o. b. cars at the mine. The output of the mine within the contract term was about 14,800 tons. The difference between the contract price and the market price was $38,339.11. Plaintiff demands judgment for this amount. The defendant contends that the plaintiff was not entitled to judgment for the following reasons: (1) The contract sued upon is void because it binds the defendant to the performance of an act that was legally impossible, and the contract is, therefore, without consideration; (2) *Gladney* had no authority, actual or apparent, to sell the output of the mine; and (3) the directions of March 1, 1920, that all shipments of coal be consigned to the Steel & Tube Company of America was a resale of coal by plaintiff without profit and, consequently, it suffered no damages.

We see no difficulty in sustaining the contract. It is clear and unambiguous. It was made upon sufficient consideration and was capable of being executed. The mine was a developed and operating mine. Its output was approximated. It was entirely possible for the mine to produce large quantities of coal and deliver the same as provided in the contract. It did produce a definite and ascertained amount of coal during the contract period. We must therefore affirm the validity of the contract and treat it as capable of being performed.

The verdict of the jury and the judgment of the court that *Gladney* acted with apparent authority, and that the plaintiff reasonably relied upon such apparent authority in executing the contract, were not excepted to by the defendant and are not brought before the court on cross-appeal. The validity of the execution of the contract, therefore, stands as a verity. If the question were before us, we would not hesitate to find that the contract was lawfully executed on the part of the defendant.

The direction of the plaintiff to the defendant that the coal be consigned to the Steel & Tube Company of America was within the contract provisions, and the question of

whether the plaintiff would have received a profit or not from its dealings with the Steel & Tube Company was not properly a subject for consideration in this case.

A considerable time was taken up at the trial concerning transportation problems from the mine to the outside markets. This was beside the issue. The issue was the difference between the market price f. o. b. at the mine and the contract price. Transportation problems may have affected that price, but the price was proven by direct evidence of the fact.

As we view this case there was but one question sharply litigated, and there is but one question here, and that is, What was the measure of damages that plaintiff suffered by reason of the defendant's repudiation of its contract? The contract called for the output of the mine. That output was indefinite and uncertain, but it was capable of being made certain, and at the trial the fact was undisputed that the output was a total of about 14,800 tons. The contract price of the coal was $3.15 per ton f. o. b. at the mine, but this was subject to being increased if the wages of miners were increased during the contract period. They were so increased, which increased the cost of the coal. So that the total difference between the contract price and the market price amounted to $38,339.11. This seems to us the measure of damages, as presented by plaintiff's case.

The fundamental idea of allowing damages for breach of contract is to put the plaintiff in as good a position as he would have been but for the breach,—this according to principles of justice. Departures from this elementary principle come from inability to apply the rule under all circumstances. In the present case we find no insuperable difficulty in ascertaining to a reasonable certainty plaintiff's damage within the rule. 8 Ruling Case Law, "Damages," § 8; 1 Sutherland, Damages, § 12; 3 Williston, Contracts, § 1338.

The plaintiff is not to profit by defendant's breach; it is to

have the benefit of the contract as if performed as contemplated. It is entitled to the profits on the instalments of coal as they should have been delivered, and it must accept deductions therefrom on instalments which would have been delivered under the contract where it is shown to a reasonable certainty that such deliveries would have been made and that such losses would have resulted if the contract had been performed.

The defendant attempted to prove that for the last three months of the contract period the mine was closed down for lack of orders, but that had the mine been operated, under the contract as claimed by plaintiff, it could and would have produced the coal as estimated in the contract, modified by the proof as to the probable production. Defendant claims on that basis a deduction of the difference between the contract price and the market price at point of delivery—the sum of $9,535,—which plaintiff would have lost during the three months if the contract had been carried out. Plaintiff submitted some evidence to that effect. The record is indefinite and uncertain on this point. As we remember it, this estimate of loss for the last three months by the defendant was not questioned on the argument. The question arises, assuming this loss to be true, should the amount be deducted from the damages established by plaintiff? We think it should. The contract called for the entire output of the mine within the contract period. The deliveries were to be made by instalments in carload lots. The output is estimated in the contract. The situation under the proofs is unusual, but the fair measure of damages, it would seem, is the value of the contract to plaintiff as it would have been if performed as a whole, if that is reasonably ascertainable. The actual output for the period of the term of the contract was ascertained at the trial. The probable output for the last three months of the term, had the contract been in operation, was attempted to be estimated within the contract conditions. We think on a retrial of that question the value

of the contract, if performed and carried out according to its terms, may be reasonably ascertained, assuming the defendant's claim is not admitted.   We are unable to say from the record that the defendant's claim of probable output for the last three months of the contract period is admitted, or that defendant has made proof of its claim with sufficient certainty to permit judgment to be entered allowing such deduction, but if the plaintiff will accept the claim of the defendant it may be permitted to have judgment for its claim less the amount of $9,535.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment for the plaintiff for $38,339.11, less $9,535, provided the plaintiff shall file with the clerk of the circuit court, within ten days of the filing of the *remittitur* herein, its acceptance of the defendant's claim for deductions to that amount; otherwise to. grant a new trial for the purpose of allowing the defendant to establish its claim for such deduction; the plaintiff's claim for $38,339.11 to stand as proven, subject only to such deduction as may be established by the defendant in accordance with this opinion; the plaintiff to have costs in this court.

Rosenberry, J. (*dissenting*).   I dissent from so much of the decision as holds that the seller is entitled to offset losses computed on the estimated output of the mine during the months which it did not operate.   The subject matter of the contract was the output of the mine, and the plaintiff cannot be charged with a loss on account of coal which was not mined.   The plaintiff was in no way responsible for the failure of the mine to operate.   To permit the defendant to offset the estimated amount of the production of the mine during the three months it did not operate is to permit the defendant to take advantage of its own default.   It in effect permits the defendant to recover the amount of plaintiff's losses for that period.   If the defendant wished to take advantage of the contract it should have tendered the coal, it

appearing that the mine would have operated had there been
a market for its output.    If the failure of the mine to
operate had been due to the default of the plaintiff, a differ-
ent rule would apply.    In my opinion the plaintiff is entitled
to judgment for the full amount.

A motion for a rehearing was denied, with $25 costs, on
April 8, 1924.