CANADIAN STEEL FOUNDRIES, LIMITED, Appellant, vs. THOMAS FURNACE COMPANY, Respondent.

*March 10—April 7, 1925.*

*Sales: Instalment contracts: Breach: Failure to pay for instalment: When waived: Delivery: Suspension by embargo.*

1. The question whether a buyer's breach in failing to pay for instalments of goods delivered was so material as to justify the seller in refusing to make further shipments is for the jury. p. 561.
2. Under a contract providing that it was subject to strikes, accidents, or other causes incident to manufacture or delivery beyond control of the seller, an embargo preventing delivery by the seller excuses nondelivery during its existence. p. 562.

3. The seller's shipment of instalments of goods after the buyer's default in payment for previous shipments was not a waiver of future defaults, nor did it amount to a course of conduct precluding the termination of the contract without notice of dissatisfaction with the continuance of such conduct.  p. 563.
4. Failure of the buyer to pay for instalments of goods shipped is not excused because of a desire to protect itself, if the seller failed to carry out the contract because of a material increase in the market value of goods above the contract price. p. 565.
5. The fact that the buyer's breach of the contract proved profitable to the seller by reason of an advance in the market price over the contract price did not preclude the seller from re- covering the contract price for the goods delivered.   p. 565.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge.  *Affirmed.*

The plaintiff, *Canadian Steel Foundries,* is a foreign corporation engaged in the steel business in Montreal.   The defendant, *Thomas Furnace Company,* is a Wisconsin corporation engaged in the manufacture of pig iron in the city of Milwaukee.   August 28, 1916, the defendant contracted to sell to the plaintiff 2,000 tons of pig iron at $32 per ton, to be shipped at the rate of 400 tons per month, beginning in November, 1916.   The terms were cash thirty days from date of shipment, one half of one per cent. discount if paid within ten days from date of shipment, "subject to strikes, accidents, or other causes incident to manufacture or delivery beyond control of seller."

At the request of plaintiff defendant started shipment in October.   With reference to the first requisition under the contract, the defendant on October 9th wrote the plaintiff as follows:

"Referring to your order, we note that you have inserted therein 'terms cash thirty days from receipt of material.' This is not satisfactory nor in accordance with our contract, terms of which are 'cash thirty days from date of shipment, privilege of discount at rate of one half of one per cent. for cash within ten days from date of shipment.' "

The following table shows the shipments made by the defendant under the contract:

| Shipping date. | Amount. | Due date. |
|---|---|---|
| October 8, 1916 | $2,557 02 | November 7, 1916 |
| October 14, 1916 | 3,816 41 | November 13, 1916 |
| November 17, 1916 | 906 05 | December 17, 1916 |
| November 18, 1916 | 2,338 55 | December 18, 1916 |
| November 19, 1916 | 1,377 59 | December 19, 1916 |
| November 30, 1916 | 1,057 66 | December 30, 1916 |
| December 6, 1916 | 876 21 | January 5, 1917 |
| December 12, 1916 | 1,044 53 | January 11, 1917 |

It will be noted that the amounts of the October shipments were due at the time shipments on and after November 17th were made, and this is all that was due when the last shipment on December 12th was made. The defendant wrote plaintiff on December 16th that it was unable to make further shipments on account of an embargo. Nothing was said in this letter about default in making payment, but at the time there was no default except on the first two cars. Payments for three cars, however, fell due December 17th, December 18th, and December 19th, just after this letter was written. Plaintiff wrote defendant December 29th reminding it that it was behind in its schedule and asking information concerning prospects for additional shipments and if the embargo was still in force. Another letter of the same tenor was written January 8th. On January 12th plaintiff wired defendant as follows: "Must have definite wire information regarding immediate shipments of pig iron. Your continued silence is surprising." A letter followed this telegram in which plaintiff said: "We are at a loss to understand your continued silence in this respect." Upon receipt of the telegram January 12th, and on the same date, defendant wired plaintiff: "There has been embargoes on shipments to Montreal since the middle of December. Owing to the fact that you violated the terms of our contract, we hereby cancel the

same and demand payment for the pig iron already shipped you."

Plaintiff then commenced this action to recover damages for breach of the contract. Defendant counterclaimed for the amount of pig iron shipped and unpaid for. The case was tried before a jury and a special verdict taken consisting of the following single question: "Was the neglect of the plaintiff to pay for the iron shipped within thirty days from date of shipment so material as to justify defendant in refusing to make further shipments after January 12, 1917?" The jury answered this question "Yes." Upon this verdict the court rendered judgment dismissing plaintiff's complaint and for the amount of the counterclaim, and from the judgment so rendered plaintiff appealed.

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee and *Davidson, Wainwright, Alexander & Elder* of Montreal, Canada, attorneys, and *Willet M. Spooner* of Milwaukee, of counsel, and oral argument by *Howard A. Hartman* of Milwaukee.

For the respondent there was a brief by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, and oral argument by *Geo. B. Hudnall.*

OWEN, J.    This case is governed by sec. 121.45, Stats., which provides:

"(2) Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

The total amount of this contract was $64,000. At the time the defendant canceled the same plaintiff was in default ·in making payment for the pig iron theretofore shipped in the sum of $13,474.02, or a trifle more than twenty per cent. of the amount of the entire contract. Was this breach "so material as to justify the injured party in refusing to proceed further?" According to sec. 121.45 this depends upon the terms of the contract and the circumstances of the case. It has been held by this court with reference to instalment contracts that where the failure to perform as to one instalment is coupled with conduct or declaration which amounts to a repudiation of the contract it constitutes a material breach as a matter of law. *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270; *Chess & Wymond Co. v. La Crosse Box Co.* 173 Wis. 382, 181 N. W. 313. It was also said that "whether or not the breach of a contract to deliver goods by instalments is by reason of the failure of the seller to deliver one or more instalments so material as to justify the buyer in refusing to proceed further, is a question of fact." *Kieckhefer Box Co. v. John Strange P. Co.* 180 Wis. 367, 189 N. W. 145, 193 N. W. 487, 196 N. W. 572. Of course it is just as true that where the breach of the contract is on the part of the purchaser by failing to pay for instalments already delivered, whether the breach is so material as to justify the seller in refusing to proceed further is a question of fact. This question was submitted to the jury and it was answered in the affirmative.

Appellant made numerous requests for instructions by the court in its charge to the jury, failure to give which it assigns as error. Most of these requested instructions embody good law, but we do not think the failure of the court to give them constituted error. The court submitted but one question to the jury with what we consider proper and ample · elucidation. It would serve no good purpose to set forth and review the numerous requests made by appellant in this respect.

There was some discrepancy in the testimony of the officers of the plaintiff corporation concerning the reason for the default in making payments, which we deem it unnecessary here to consider. The court took the view most favorable to the plaintiff in treating the issue involved as one of fact, and upon either reason put forth by the plaintiff for its failure to make payment in accordance with the terms of the contract the jury was justified in finding that plaintiff's breach was so material as' to justify the defendant from proceeding further.

The appellant contends that the defendant was in default in making the shipments. The defendant was not in default on the 1st day of December. Up to that time it had shipped all the ore for which the contract called. It is not disputed that during the month of December there was an embargo on the shipment of ore from Milwaukee to plaintiff's Canadian plants, or to either or any of them. Appellant contends that this embargo did not release the defendant from making shipments. This contention, however, is plainly untenable. By the terms of the contract it was "subject to strikes, accidents, or other causes incident to manufacture or delivery beyond control of seller." This embargo absolutely prevented delivery on the part of the seller. It was a cause over which it had no control and suspended the operation of the contract, or at least excused the default of the defendant during the time it was in existence. *Hess Bros. v. Great Northern Pail Co.* 175 Wis. 465, 185 N. W. 542.

It is further claimed on the part of the appellant that its default was waived by the respondent. That claim is premised upon the conduct of the defendant. The waiver, if any there was, was implied and not express. The claim must rest mainly upon the fact that after November 13, 1916, the date upon which payment for the first two carloads shipped, amounting to $5,873, was due, the defendant shipped six more carloads. The last of these was shipped on December 12, 1916, and upon that date there was nothing due except

for the two cars shipped in October. It is claimed that this conduct on the part of the defendant amounted to a waiver of prompt payment according to the terms of the contract. Let us analyze the situation and see just what the defendant waived, if anything.

When defendant resumed shipments in November, 1916, there was due upon the two October shipments $5,873. If by reason of this default on the part of the plaintiff it had a right to decline to proceed further with the contract, it evidently waived that right when it resumed shipments. It did not waive its right to insist upon payment, nor can it be said that it thereby established a custom or usage which amounted to a modification of the contract, or upon which the plaintiff had any right to rely with reference to future payments. It is not at all clear that the breach on the part of the plaintiff at the time of resuming shipments in November was of such a serious nature, considering the amount of the contract, as would have justified the defendant in proceeding further under the contract. The defendant might very well have felt little concerned about this default. It does not indicate, however, an intention on its part to waive all future and accumulated defaults. It simply constituted an indulgence on the part of the defendant.

Speaking of a similar situation with reference to the payment of a premium on an insurance policy, the supreme court of the United States, in *Thompson v. Insurance Co.* 104 U. S. 252, at p. 260, said:

"The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions."

Speaking of a similar situation, the supreme court of Massachusetts, in *Wilkinson v. Blount Mfg. Co.* 169 Mass. 374, 376, 47 N. E. 1020, said:

"As the goods were to be furnished from time to time, there was imposed a continuing liability to pay for each lot

within sixty days from delivery thereof.    Undoubtedly if the defendant received payment for any lot after the amount was due, it could not rescind the contract for the default in paying for that lot.    But a waiver of one breach cannot be considered a waiver of a subsequent breach."

The case of *Wilbur v. Means,* 171 Wis. 401, 177 N. W. 575, is relied upon by appellant.    In that case the situation was altogether different.    The contracts there under consideration called for a down payment and future payment satisfactory to the vendor.    There were many shipments and a course of conduct established which the vendee had a right to consider satisfactory to the vendor, and it was held that the vendor was bound by the custom thus established in the absence of notice to the vendee that the method of payment was no longer satisfactory to him.    It may well be that a course of conduct between the parties may be followed resulting in a default according to the express terms of the contract on the part of one or the other upon which the injured party should not be permitted to declare a termination of the contract in the absence of notice that such custom or usage is no longer satisfactory to it.    But we have no such situation here.

There is much reason to believe that the defendant welcomed this default and an opportunity to decline to proceed further with the contract, as the price of its material was constantly advancing, and at the time of the termination of the contract the market value was double that of the contract price.    There is also testimony on the part of the officers of the plaintiff that it withheld payments because it was feared that the defendant would not carry out the contract.    If this be true, the plaintiff adopted a rather hazardous course for the protection of its rights.    Under such circumstances it behooved the plaintiff to punctiliously perform the contract on its part so as to give no excuse to the defendant for the termination of the contract.

But these are considerations which cannot enter into the

determination of this case. These parties mutually and voluntarily entered into a contract, and their mutual rights and liabilities are fixed by its terms. The motives which prompted the action of either party leading up to the termination of the contract are immaterial. If the plaintiff, in a misguided effort to protect itself, released the defendant from its obligations under the contract, it cannot escape the legal result of its improvident policy.

Appellant contends that the defendant is not entitled to judgment on its counterclaim because had the full 2,000 tons been shipped at the contract price it would have lost the resale thereof at the market price, which at the time of the termination of the contract was nearly double that of the contract price. Reliance is placed upon *Milwaukee Coke & Gas Co. v. Central Wis. S. Co.* 183 Wis. 396, 197 N. W. 180. That case has no application. That was an action to recover damages for breach of contract. Defendant's counterclaim is for the recovery of the contract price of the ore delivered. To this action plaintiff has no defense. If the action were to recover damages because of plaintiff's breach, and it were necessary to consider whether the defendant sustained any damages by reason of the breach, the case cited might have some application. But under the issues as presented it is plain that it has no application whatever.

*By the Court.*—Judgment affirmed.