WILBUR and another, Appellants, vs. MEANS, Respondent.

*April 7—May 4, 1920.*

*Sales: Waiver by seller of right to immediate payments: Duty to
   notify buyer that prompt settlement was required: Acceptance
   of partial payments on condition: Unreasonable delay of
   buyer: Evidence.*

1. In an action by ice brokers for a breach by defendant of his
   contracts, assigned to them by the buyer, to sell and deliver
   ice, the evidence is *held* insufficient to support a finding that
   the defendant seller accepted a sight draft for $500 as the
   first payment on one of the contracts on condition that the
   plaintiff brokers should promptly pay the balance then due
   on the other, and that they did not promptly pay such balance.
2. Though an unreasonable time elapsed before the buyers of the
   ice made payment to the seller, a breach of the contracts was
   not the necessary or inevitable result, which, under sub. 2,
   sec. 1684*t*—45, Stats., depended on the terms of the contract
   and the circumstances of the case.
3. Where such buyers did not make prompt payment for each
   car of ice as received, they had a right to assume that similar
   dealings with reference to a completed contract would be
   satisfactory to the seller, who was under the duty to bring
   home to them the fact that he expected prompt payment for
   each car of ice shipped under the contract being then per-
   formed, if he intended to insist on such construction of the
   contract.

APPEAL from a judgment of the circuit court for Oneida
county: A. H. REID, Circuit Judge. *Reversed.*

Defendant *Means* puts up and deals in ice at Rhinelander.
Plaintiffs are brokers in ice doing business at Waukesha.
April 2, 1919, *Means* entered into two contracts for the sale
of ice with one P. J. Buckley, who thereafter assigned the
same to plaintiffs. By one of these contract *Means* agreed
to sell to Buckley or his assigns 1,000 tons of ice at $1.75
per ton f. o. b. Rhinelander. One hundred dollars was
paid in cash, and Buckley further agreed to make satis-
factory arrangements with *Means* for the further payments
of said ice, railroad weights to govern. This was stack ice
and was to be all shipped before May 15, 1919. By the

second contract *Means* agreed to sell Buckley or his assigns 1,000 tons of ice f. o. b. Rhinelander at $2.50 per ton for July and August delivery. A part payment of $500 was to be made on or before June 15, 1919, and at the time of making said payment further satisfactory arrangements were to be made for the payment of the balance upon the receipt by Buckley or his assigns of railroad weights. This ice was to be delivered from the icehouse of defendant, and will be referred to hereafter as the house-ice contract. Sometime in April, or at least early in the season, one car of stack ice was shipped and paid for. The balance of the stack ice was shipped on successive dates commencing June 2d and ending June 13th. No further payments were made on the stack ice, and the balance due defendant when delivery was completed was the sum of $249.48. On June 12th defendant wrote plaintiffs as follows:

"I have received several communications from you and will try to ans. at least some of them. You will find all of the bills with this including todays shipment you will see that bill on car 90454 NYC says no wght. I cannot tell how they let this get out without weighing. It was probably about 60,000 or 62,000. Perhaps the R. R. Co. weighed it somewhere *en route*. Now we shall load the last car of stack ice tomorrow but will continue to ld from house on house contract if you do not object I should rather load on Soo line than N W can you find it with Racine to take it over Soo Line after this week I have been having my troubles with that log track but that is done now. you can send me check the $500.00 on house contract. Let me know the condition of ice as to packing any complaint."

Defendant shipped a carload of house ice on each of the 16th, 17th, and 18th days of June. On the 18th day of June defendant wrote plaintiffs a letter in which he said:

"As I have not received your check for the $500 which was due on contract June 15, I cannot see my way clear to ship any more ice to your acct.

"I will send all bills of lading tomorrow and you can please forward check as soon as you can verify them. This is final."

On the 18th day of June *Wilbur* left Waukesha for Rhinelander, arriving there on the morning of the 19th. Defendant's letter of the 18th inst. passed him on the way and he had no knowledge of its having been written when he arrived at Rhinelander. On the 19th *Wilbur* and the defendant spent most of the day together making arrangements for the shipping of the house ice, but the defendant said nothing to *Wilbur* about having written the letter of the 18th. During the day *Means* brought up the subject of the $500 payment on the house-ice contract. *Wilbur* said "We will go over to the bank and fix it up." They went to the bank. *Wilbur* asked for a blank check, but they had none. He then asked for a blank draft, filled it out in the form of a draft by defendant *Means* on plaintiffs, and had *Means* sign it. The draft was handed to the cashier, who asked *Means* whether he wanted the draft cashed or whether he wanted it collected in due course. *Means* said it made no difference, as he did not need the cash, and it was agreed that it should be collected in due course. The draft went through and was paid in due course, less twenty-five cents for collection charges. The amount due on the stack ice was also talked over, and it was agreed that *Means* should send a statement of the amount due and that plaintiffs would send a check therefor. *Means* manifested no anxiety concerning the balance due on the stack ice. He had sent no statement to plaintiffs of the amount due, and the only data plaintiffs had with reference thereto were the individual invoices of each car shipped, and at least one of these failed to disclose the amount of ice in the car. *Wilbur* left Rhinelander on the night of the 19th, arrived in Waukesha on the evening of the 21st, which was Saturday, and did not go to his office until the morning of Monday the 23d, when he first discovered *Means's* letter of the 18th. Defendant resumed shipments of the house ice and shipped one car each day on June 20th, 23d, and 24th. On June 25th his attorney addressed to P. V. Buckley the following letter:

"*Mr. P. O. Means* has just been in to see me regarding a

paper signed by you and him at Rhinelander on the 2d day of April, 1919. This paper evidently was intended to be a contract for the sale of certain ice whereby you agreed to pay him $500 as a part payment on or before the 15th of June, 1919, and to make further satisfactory arrangement for the payment of the balance upon the receipt by you of the railway weights.

"*Mr. Means* informs me that you did not pay the $500 on or before June 15th, nor did you pay the amount until he was forced to deposit a sight draft against you. If his statement is correct, then your failure to pay the $500 on or before June 15th voided this paper as a contract. *Mr. Means* therefore wishes me to inform you that he does not care to complete the terms of the paper signed by you and him on the 2d day of April and he herewith wishes me to notify you that the terms of this paper are at an end so far as furnishing you any more ice as called for therein."

Upon receipt of this letter on June 27th *Wilbur* telegraphed *Means*:

"Smith letter to *Buckley* does not interest us as the agreement I made with you is the one that holds good. You had better ship as agreed and go tell your lawyer the whole fact and that I have a witness to agreements made in hotel, otherwise we shall start suit for judgment immediately."

And on the same day he wrote *Means* as follows:

"Inclosed find our check for $200 to apply on account. Kindly acknowledge same. Also let us know if you have any trouble getting refrigerator cars."

This letter was returned by *Mr. Means* with the following notation on the bottom: "*Mr. Wilbur:* Returning check; will send you statement of full acct. *P. O. Means.*" Thereafter this action was commenced.

The jury returned the following verdict:

"(1) On June 19, 1919, when defendant accepted the sight draft for $500 as the first payment provided for on the contract for 'house ice,' was said draft accepted on condition that plaintiff should promptly pay the balance then due on the 'stack ice' which had been shipped? *A.* Yes.

Wilbur v. Means, 171 Wis. 401.

"(2) If you answer the first question 'Yes,' then answer this: Did the plaintiffs make prompt payment of the balance due on the 'stack ice'?    A. No.

"(3) On June 25, 1919, had more than a reasonable time elapsed for the making of payment by plaintiffs for the cars of ice shipped June 16th, 17th, and 18th after receipt by plaintiffs of the railroad weights?    A. Yes.

"(4) On June 25, 1919, what was the market price per ton of good quality of ice loaded on cars at Rhinelander, Wisconsin?    A. $4."

Upon this verdict judgment was rendered in favor of the defendant and against the plaintiffs in the sum of $121.01, from which judgment plaintiffs appealed.

For the appellants there was a brief by *M. A. Jacobson* of Waukesha, and oral argument by *D. B. Malone* of Waukesha.

*Charles F. Smith, Jr.,* of Rhinelander, for the respondent.

OWEN, J.    The jury found that the defendant accepted the sight draft for $500 as a first payment on the house-ice contract on condition that plaintiffs should promptly pay the balance then due on the stack ice and that the plaintiffs did not promptly make payment of such balance. This finding was essential in order to constitute the delinquency of the plaintiffs, if any, in making payment for the stack ice a breach of the house-ice contract. We have carefully searched the record for evidence to sustain this finding of the jury, but we are unable to find a scintilla of evidence to support it. On the contrary, the evidence, taken as a whole, to our minds, negatives any such understanding. There is not a word of evidence indicating that the defendant *Means* entertained any anxiety or dissatisfaction because of the unpaid balance on the stack ice, or that at any time he was pressing for payment. His letter of June 12th, in which he states that they would "load the last car of stack ice tomorrow," does not suggest any dissatisfaction on his part

in such respect; but indicates his willingness and purpose to immediately commence shipment on the house-ice contract. He says: "I have received several communications from you and will try to ans. at least some of them," which is a tacit admission of his own delinquency in replying to communications received by him from the plaintiffs. He admits that one bill of lading did not indicate the weight of the ice in one car, from which it conclusively appears that plaintiffs did not have at hand the data upon which to compute the amount due defendant on the stack-ice contract. That he had not sent them a statement of the amount due on this contract as late as June 27th is indicated by his notation at the foot of plaintiffs' letter to him under date of June 27th, where he said: "Returning check; will send you statement of full account." Furthermore, defendant does not claim in his testimony that he stated or intimated to *Wilbur*, on the 19th, that the receipt of the draft for $500 was conditional upon the prompt payment of the amount due upon the stack-ice contract, or that he was in any manner concerned about the unpaid balance. We therefore conclude that this part of the special verdict cannot stand.

A breach of the contract on the part of plaintiffs excusing defendant from further performance must rest solely upon the finding of the jury in response to the third question of the special verdict, which was to the effect that on June 25, 1919, more than a reasonable time had elapsed for the making of payment by plaintiffs for the cars of ice shipped June 16th, 17th, and 18th after receipt by plaintiffs of railroad weights. Granting that an unreasonable time did elapse, a breach of the contract is not the necessary or inevitable result. It depends "on the terms of the contract and the circumstances of the case." Sub. 2, sec. 1684*t*—45, Stats.; *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270. The question is therefore whether, under the terms of the contract and all the facts and circumstances, the failure of plaintiffs to pay for the ice shipped on June 16th, 17th, and

18th authorized the defendant to treat the contract as breached on the part of the plaintiffs and to refuse to make further delivery on June 25th. It is not entirely plain whether the $500 cash payment was to be an advance payment to be applied on the first shipments or whether it was to be a payment in the nature of security for the entire contract, to be retained by defendant and applied on the last shipments. The circuit judge construed the contract to mean the latter. Without expressing any opinion thereon we will, for present purposes, assume that to be the proper construction.

We have now to take into consideration the provision of the contract calling for "satisfactory arrangements for the payment, at the conclusion of which defendant wrote plaint-P. J. Buckley or his assigns of railroad weights" at the time of making the $500 payment, and the prior course of dealing between the parties under the stack-ice contract, which was very similar. We have seen that $100 was paid down on the stack-ice contract; that the first car of ice shipped was paid for immediately, but the remainder of the stack ice, amounting to $249.48, was shipped without further payment, at the conclusion of which defendant wrote plaintiffs that he would immediately start shipment upon the house-ice contract. There was no protest of past practices, no withdrawal of credit, and no indication that a different manner of payment was expected. In view of the course of dealing between the parties under the stack-ice contract and the interview between *Wilbur* and *Means* on the 19th of June, it is clear to us that plaintiffs had a right to assume that similar dealing with reference to the house-ice contract was satisfactory to the defendant. In view of this course of dealing it was the duty of the defendant to bring home to plaintiffs the fact that he expected prompt payments for each car of the house ice shipped, if it was his intention to insist and rely upon that construction of the contract. Granting that he had a right to insist upon that manner of

payment, he could not lead .the plaintiffs to believe that the former course of dealing was satisfactory and, without advising them to the contrary, insist upon a breach of the contract without demanding or requesting a different method of payment. It is therefore our conclusion that the defendant waived his right (if any he had) to insist upon a breach of the contract by reason of the failure of plaintiffs to make prompt payment upon each car shipped, and that he had no right to refuse further deliveries as he did on the 25th day of June. It follows that plaintiffs are entitled to recover their damages by reason of the failure of defendant to deliver the ice pursuant to the terms of the contract, and the judgment must be reversed, and the cause remanded with instructions to enter judgment in favor of plaintiffs and against defendant for the difference between the amount of their damages, computed upon the market price of ice loaded on cars at Rhinelander, as found by the jury, and the amount due defendant for ice shipped.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment for plaintiffs for the amount of their damages as indicated in the opinion.