HESS BROTHERS, INC., Respondent, vs. GREAT NORTHERN
PAIL COMPANY, Appellant.

*November 15—December 13, 1921.*

*Sales: Fluctuating prices as ground of repudiation: Excuse for
nonperformance: Acts of superior authority: Embargo on
freight shipments: Requested modifications as breach of con-
tract: Waiver of minor breaches of agreement: Nondelivery
of goods: Damages: Time of computation.*

1. Great fluctuations in prices which have occurred in the past few
   years, while they furnish a motive, do not warrant repudiation
   of contracts of sale of goods.
2. Where delivery of goods is prevented by acts of superior
   authority (in this case an embargo on shipments west of
   Chicago), nonperformance is excused during the period of
   the inhibition; but the contract is not dissolved unless the
   inhibition will probably continue for such a period of time as
   will frustrate the object of the contract.
3. Where a carload of candy pails was ordered December 9, 1916,
   and defendant made repeated unconditional promises to per-
   form, and did not notify plaintiff of any intention to repudiate
   until December 6, 1918, the latter date should be considered
   as the date of breach by defendant for the purpose of fixing
   damages.
4. Mere requests by the seller for changes or modifications of the
   contract, or objections to its terms, will not constitute a re-
   nunciation or repudiation of the contract when unaccom-
   panied by a statement that it will be repudiated unless the
   changes or modifications are made.
5. A buyer at all times insisting on performance of a contract to
   deliver cannot claim damages for a breach as of an earlier
   date than the seller's unequivocal notice of repudiation, if, on
   account of fluctuating prices, such claim would be to the dis-
   advantage of the seller.
6. In this case it is *held* that time was not of the essence of the
   contract, both parties having treated its performance as likely
   to be delayed and neither party treating it as abrogated or
   repudiated until long after the time fixed for its expiration.
7. Under sub. 3, sec. 1684t—67, Stats., the measure of damages
   for breach of a contract to deliver goods is the difference be-
   tween the contract price and the market price at the time of
   breach.

8. The contract providing for a discount of two per cent. if payment was made within ten days on each shipment, the seller could not accept payment after such ten days with the two per cent. deducted without objection and later repudiate the contract on the ground that the taking of such discount breached the contract.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Modified and affirmed.*

The appeal is from a judgment in favor of the plaintiff for $403.51 and costs, damages resulting from an alleged breach of a contract to deliver a carload of candy pails.

On December 13, 1915, a contract was made whereby the defendant agreed to sell and the plaintiff agreed to buy plaintiff's entire requirement of candy pails, approximately five carloads, for the period from January 1, 1916, to December 31, 1916, delivery to be made in carload lots, as wanted, payment thirty days net, or two per cent. discount if paid within ten days from date of invoice. It was expressly agreed that the contract should be subject to certain conditions beyond the control of the parties, among others car supply and delay in transit.

On January 1, 1916, one carload of pails was shipped. On January 31st defendant received payment less two per cent. discount. On September 5, 1916, a second car was shipped. Remittance was made September 27th, the same discount being taken. On December 9, 1916, plaintiff sent a letter ordering a third car. Defendant replied to this letter January 3, 1917, stating that—

"An embargo has been placed on all shipments west of Chicago and has prevailed for the last thirty days, and for that reason we have been unable to ship you your car of pails. How long this embargo will last is unknown, and inasmuch as our contract ends January 1st we presume it will be satisfactory to consider the contract closed.

"Should you desire to take up the matter of a contract for 1917, it will be necessary for you to take the matter up at an early date."

Plaintiff replied on January 6th, stating that it was not satisfactory to consider the contract closed and that the car should be shipped as soon as the embargo was lifted. No answer having been received, plaintiff on April 9 and again on May 3, 1917, called attention to the order and requested shipment.

On June 11, 1917, defendant sent the following letter:

"Replying to your letter of May 30th, wish to say that we will make shipment on June 25th of car containing 50 dozen 30-lb. taper pails one inch short and balance of car with 30-lb. straight pails. Trusting this will be satisfactory to you, we remain."

In a letter dated July 23, 1917, defendant reiterated its intention to ship the car in the near future, "not because you threaten suit in the matter, but because we feel under obligations to fill the order, having received it in good faith before the first of the year."

The car was never shipped. On October 25, 1918, in reply to a letter from plaintiff, defendant offered to ship a carload of a different kind of pails, sight draft to be attached to bill of lading. This offer was refused, plaintiff saying it was not in accordance with the contract. On December 4th defendant again made the offer. On December 6, 1918, defendant, in answer to a letter from plaintiff's attorneys, definitely refused to ship under the former agreement, and gave as the reason that plaintiff had violated the agreement by deducting the two per cent. discount, and plaintiff was invited to bring suit if it desired.

The contract price of the carload of pails was $766.10, and the market price of the same on December 6, 1918, was $1,170.

The case was tried without a jury. The trial judge found that the contract was breached by the defendant and found the damages suffered by plaintiff to be $403.90. Judgment was ordered for that amount with interest from December 9, 1916.

*George Hoxie* of Gillett, for the appellant.

For the respondent there was a brief by *Lehner & Lehner* of Oconto Falls, attorneys, and *Otto L. Lehner* of Madison, of counsel, and oral argument by *A. J. Whitcomb* of Oconto.

JONES, J.   The great fluctuations of prices during the last few years have brought about a flood of lawsuits.   While such fluctuations have caused great loss to many persons who have contracted to buy or sell goods for future delivery, and while they afford a motive for attempting to avoid the effects of such contracts, they are clearly no cause for their repudiation.   There would be little certainty or safety in such business transactions if a contrary rule prevailed.

It is urged by defendant's counsel that the so-called embargo afforded grounds for refusing to perform the contract. The trial court found that no embargo existed on Eastern shipments at the time defendant received plaintiff's order and that it existed only from December 18, 1916, until the first week in January, 1917.

There are many English cases holding that when the delivery of goods is prevented by acts of superior authority beyond the control of the person obligated to deliver, the nonperformance is excused during the period of the inhibition; but that the contract is not dissolved unless at the time it should have been performed there is a reasonable probability that the inhibition will continue for such a length of time as to frustrate the object of the engagement from a business point of view.   See cases cited 3 A. L. R. 29.

Evidently neither party contemplated any such probability, for although in the letter of January 3, 1917, defendant suggested that it might be satisfactory to plaintiff to consider the contract closed, the plaintiff at once gave notice that it would not be satisfactory, and the later correspondence clearly showed that neither party treated it as closed.

There is no doubt but defendant renounced the contract. As bearing on the question of damages it is important to

determine when the renunciation took place. Plaintiff's counsel claim that the breach of contract occurred on December 6, 1918, when defendant wrote that plaintiff had not lived up to its part of the contract and unequivocally refused to make shipment. Appellant's counsel claim that the breach took place soon after July 23, 1917, since the defendant failed to ship the car which it then promised to ship in the near future. In other words, defendant relies on its own delay and nonperformance of the contract to minimize the damages.

It is plain that defendant never notified the plaintiff of any intention to repudiate the contract until December 6, 1918. On the contrary, it made repeated unconditional promises to perform. On October 25, 1918, defendant wrote asking for specifications of the car desired to be shipped and made an offer slightly modifying the previous arrangement, and on December 4th made another offer to ship a car but attached the condition that a sight draft should be attached to the bill of lading. It appears that there was some correspondence not included in the record. Thus it appears that from the execution of the contract until December 6, 1918, the correspondence relating to it continued, although with considerable intervals of interruption. During all this time plaintiff insisted upon performance and defendant did not repudiate the contract, although some modifications were suggested. There was no statement that the contract would be repudiated unless the changes or modifications were made, and mere requests for changes, or objection to the terms of the contract, do not constitute renunciation. 5 Page, Contracts (2d ed.) §§ 2903, 2904.

If defendant had desired to repudiate the contract in order to diminish damages, or for any other reason, it could have sooner given such unequivocal notice as it gave on December 6, 1918, and the plaintiff could have obtained its supplies elsewhere. If such notice had been given it would not have been just for plaintiff to claim damages for a breach as of an

earlier date, if on account of fluctuating prices such claim would be to the disadvantage of defendant, since plaintiff had been insisting upon performance.  Nor can defendant complain that the action was not brought until plaintiff had notice of defendant's intention not to perform the contract.

It is clear that time was not of the essence of the contract. Both parties throughout treated its performance as likely to be delayed, and neither party treated it as abrogated or repudiated until the final letter of defendant.

In determining when breaches of contracts take place every case must be controlled by its own facts.  We are convinced that in view of the correspondence and conduct of the parties the damages should be assessed as of the date when defendant repudiated the contract, December 6, 1918, and that the difference between the contract price and the market price at the time of refusal to deliver was the proper measure of damages.   Sales Act (sub. 3, sec. 1684*t*—67, Stats.).

It is claimed by defendant's counsel that plaintiff breached the contract by making two discounts of two per cent. contrary to the terms of the agreement, and that this excused performance on the part of defendant.  We do not consider this point well taken, for the reason that it plainly appeared from the books of defendant that the discounts had been deducted on January 31 and September 27, 1916, and no objection had been made until December 6, 1918, when it was decided to repudiate the contract.   The plaintiff might well have believed that its course of dealing was satisfactory, and this branch of the defense was waived.  *Wilbur v. Means,* 171 Wis. 401, 177 N. W. 575.

By some mistake or inadvertence the court allowed interest from December 9, 1916, instead of December 6, 1918. This mistake should be corrected and otherwise the judgment should be affirmed, with costs to be paid by respondent.

*By the Court.*—Judgment affirmed as modified.