Stehli Silks Corporation, Appellant, vs. Pettibone-
Peabody Company, Respondent.

*January 15—February 12, 1924.*

*Sales: Order for goods: Acceptance.*

1. Order forms for the purchase of goods, some of which con-
tained in heavy type a provision that prices were subject to
change in case costs were affected by new revenue or tax
laws, the conduct of the parties, and their correspondence,
are *held* to show a binding contract of sale without any pro-
vision for protection of the buyer in case of falling prices,
and a breach by the defendant buyer to the damage of the
plaintiff seller. p. 629.
2. The buyer's letter to the seller, stating that the buyer had
given what appeared to be an "ironclad" order and expressing
a belief that, if conditions warranted it, the seller would take
.care of the defendant, with a reference to a lowering of
prices, is a definite and absolute acknowledgment of the con-
tract set out in the acceptance. p. 630.
3. Where, in the placing and acceptance of the buyer's order, three
forms were used—the buyer's order form, the seller's order
form, and the acceptance form,—the fact that there were
printed clauses in the seller's order form and the acceptance
form which were not found in the buyer's order form is
immaterial where the buyer's form provided that the order
was "taken subject to printed conditions on seller's order
form." p. 630.

.Appeal from a judgment of the circuit court for Outa-
gamie county: Edgar V. Werner, Circuit Judge. *Reversed.*

Plaintiff is a manufacturer and wholesale dealer in silks
in New York City. Defendant conducts a large retail dry
goods business in Appleton, with Mr. Steele as president
and manager.

April 14, 1920, one F. A. Johnstone, accredited repre-
sentative of the plaintiff at Appleton and vicinity, called in
accordance with a custom of ten or fifteen years at defend-
ant's store, and after a conference with the defendant's
buyer, a Miss Lohn, there was made out on a printed form
of *defendant* an order (No. 2499) for a large quantity of

silks and satins of various descriptions and prices; the extensions. were not carried out, however, but in the blank headed "Approximate amount of order" there were inserted the figures $3,300. It provided for shipment the following September and was stamped by Johnstone with this clause: "This order taken subject to printed conditions on seller's order," and signed by him on behalf of plaintiff. It was executed in duplicate and later submitted to Mr. Steele and he inserted his initials as approval in the proper space. Later the same day Johnstone executed in triplicate, on *plaintiff's* printed order form, substantially the same order as above and stamped with the special clause above stated. One of the copies so made was left with defendant. It also had in the printed heading the following: "Prices subject to change to extent costs are affected by new revenue or tax laws."

April 20th there was executed on still another printed form of plaintiff's, numbered 14484, and headed "Acceptance by *Stehli Silks Corporation,*" of order given by defendant; with the same printed provision as to prices subject to change, etc., as quoted above, and also, as part of the printed heading, the following clauses not found in either of the preceding documents, to wit:

"Exact color matches not guaranteed. Classification of product by our examiners shall constitute correctness of quality and merchantability. Non-acceptance of goods for any reason other than provided for hereon is to be submitted at once to arbitration by the bureau of adjustment and complaints of the Silk Association of America, whose award shall be final and binding upon both parties. Unless copy signed by buyer is received by us not later than ——, our fulfilment of this order is optional."

And at the foot was typewritten: "Order as per your memorandum No. 2499 given our representative, Mr. F. A. Johnstone, April 14, 1920." No aggregate price was stated on it. The prices as fixed aggregated about $4,370.61, and the market price in New York in September, 1920, was

$2,181.90. This was sent by letter April 21, 1920, addressed to defendant, "For Miss Lohn," and reading as follows:

"The inclosed acceptance No. 14484 covers September delivery order placed with me.

"In figuring our 2 — 10 — 60 price for quality 5309 satin crepe, our representative made a slight error. The same should read, $4.40 a yard and not $4.39½ a yard. An illustrated copy of your assortment is also sent herewith."

The court found as a fact from the testimony that prior to the giving of the order Mr. Steele had instructed Miss Lohn to make no contracts for the future delivery of silks without some provision to the effect that, in case of any falling of prices in the general silk market affecting such goods, the defendant should be allowed a corresponding reduction in the price to it. That there was a substantial decline from March on is undisputed.

May 7th Mr. Steele wrote to plaintiff as follows:

"Referring again to our order No. 2499 given your Mr. Johnstone on April 14th.

"As a relief from the general tenor of letters you may be receiving at this time, we want to say this: We have given you an order which appears to be ironclad, at least so far as would be indicated by the acceptance you sent us.

"We are not giving any particular thought to the probable revision of prices on this order. You have taken good care of us in the past, and we believe that if conditions warrant a lowering of the prices made to us, you will take care of us."

This was answered with notation, "For Miss C. Lohn," by letter of May 14th through its secretary, Mr. Barlow, stating among other things as follows:

"Relative to price revision, the matter referred to in your letter of May 7th, as we work, with no concession or benefit to one firm that we cannot make general, it assures you of equal treatment, for to do otherwise it would not be in keeping with our principle of the Square Deal. We have not to date extended any price concessions, and do not see how we

could do so, as it would be just so much net loss to us, with no chance to recoup, nor have we accepted any cancellations, as you must know. . . ."

"Regarding the price basis on which your order stands booked with us, even comparing it with the lowest basis that has governed to date, there is not such a difference as to cause any real loss in disposing of the goods, and should you place a further order on the present basis you could easily strike an average between this basis and that on which you made your earlier purchase.

"You know how we always make good and that we seek to work only with those firms whom we have reason to believe will reciprocate, and we really cannot think of any firm of standing taking exception to our position and the equities involved."

May 17th Mr. Steele wrote:

"I have Mr. Barlow's letter of May 14th. It contains many sentiments to which I personally subscribe. Your company has always done what is fair in the past, and I think your course will be the same from this time forward.

"However, Mr. Barlow's letter doesn't really say what you are ultimately going to do or not do. And it is awkward for me to press the point."

On May 21st, in Mr. Barlow's absence, his assistant, Mr. Carr, wrote plaintiff quoting the above letter and closing as follows:

"We have not to date extended any price concessions and do not see how we could do so, as it would be just so much net loss to us with no chance to recoup, nor have we accepted any cancellations, as you must know, which, according to our understanding, would cover the matter fully, but if any further word is necessary, let us add that the merchandise which you have on order with us will be billed at the prices named on the contract."

No further communication or correspondence between the parties with reference to this matter seems to have been

had until a telegram was sent September 13th by defendant to plaintiff reading:

"Referring to our order of April 14th, No. 2499, due for shipment September 15th, we regret having received no notice·from you of price readjustment commensurate with present market·prices.    Therefore if .shipment is made unless on basis of full recognition of present silk conditions, must advise that such shipment will be made at your own risk."

Plaintiff on September. 14th telegraphed acknowledging defendant's telegram and in effect stating that it cannot agree with the position therein taken because it had made no price concessions and accepted no cancellations.

A lengthy letter of September 15th from plaintiff evidently crossed in the mails a long letter from defendant of the same date.    Each letter contained the views of the respective parties as to their positions.    Further communications were had by telegram and letter not deemed material here other than that they show that no silk was shipped by plaintiff, although·notice had been given by plaintiff that a portion of the order would be forwarded.    October 18th defendant by telegram notified plaintiff to cancel the undelivered portions·of the order.

October 18th plaintiff wrote defendant referring to the acceptance of April 20th and to defendant's refusal to accept being treated by plaintiff as a breach of the contract and advising of plaintiff's purpose to sell the same for defendant's account and to charge it with the loss and damage. Also stating that after. a canvass of the market to obtain the highest price in order to make the loss as small as possible, certain quoted prices for the respective items were the best obtainable 'and that unless·a higher responsible offer could be had by October 22d plaintiff would accept such offer and sue defendant for the difference.    October 21st defendant's president, on behalf of the company, wrote plaintiff as follows:

"We have your letter of October 18th.    Our position is that we never made a contract with you because our minds did not meet upon the terms.    When the order was taken

your salesman assured us that you would take care of us in case of a drop in prices. Through a mistake it was not stated in the order. However, we took this matter up immediately with you by letter and personal interview.

"Conceding that there was a contract, for the purpose of argument, let us say that you sent us an invoice for about one fourth of the amount of the order. We telegraphed you in effect that if the order was shipped, it would be at your risk, meaning, of course, that we expected you to do the fair thing on prices. Four weeks after you sent us the invoice for one fourth of the order you made no further deliveries, and we, therefore, under the terms of the contract allowing us to countermand for any reason, notified you not to send the balance of the shipment.

"We feel that you are entirely wrong in this matter."

On defendant's motion, at the end of a jury trial, the court directed a verdict in its favor and also made findings of fact and conclusions of law, the latter to the effect that no contract was ever entered into between the plaintiff and defendant for the purchase of silks as set forth in the complaint or in any other manner, and that defendant is entitled to judgment dismissing the complaint.

From the judgment so entered plaintiff has appealed.

For the appellant there was a brief by *Ryan & Cary* of Appleton, and oral argument by *T. H. Ryan*.

For the respondent there was a brief by *Bradford & Bradford* of Appleton, and oral argument by *Francis S. Bradford*.

ESCHWEILER, J. We are satisfied from the orders, correspondence, and actions of the parties to this record that there was a binding contract between the two, a breach thereof by the defendant, and a consequent liability for damages to plaintiff. Though express instructions were given by Mr. Steele to defendant's buyer, Miss Lohn, that no contract should be made with plaintiff except with provision for protection in case of falling prices, and even though there was testimony from which the court found that such a promise was made on April 14th by Mr. Johnstone, plaintiff's

representative, nevertheless the two sets of orders made out on April 14th and the acceptance by plaintiff of April 20th omitted any such provision and such omission was known to Mr. Steele from the start.

The first order on defendant's own blank on April 14th and approved by Mr. Steele by signing his initials, the second order on plaintiff's blank made out the same day, and the acceptance of April 20th, each disclosed on its face that there was no such provision. The second order and the acceptance each contained in heavy type in the heading a provision that prices were subject to change in case of costs being affected by new revenue or tax laws, so that the very subject of possible change in price was expressly provided for, thereby impliedly excluding the idea of any contract to so change for other grounds.

The letter of May 7th by Mr. Steele, quoted above, calling their order "ironclad" and expressing a belief that if conditions warranted it the plaintiff would take care of defendant in the matter of lowering of price, can and should have no other interpretation than that it was a recognition that there was then a binding contract between the parties with no provision for such a price revision. Were there any possible doubt in the situation, it is cleared up by the subsequent and repeated statement by plaintiff as shown in the correspondence quoted above, plainly asserting that no such condition existed.

The letter of May 7th must be deemed to be a definite and absolute acknowledgment of the contract set out in the acceptance of April 20th.

That there were printed clauses in the second order and the acceptance not found in the first order on plaintiff's form is entirely immaterial; such possible changes were expressly provided for in the clause stamped on the first order that such order was "taken subject to printed conditions on seller's order form." They are also immaterial because in effect waived by defendant's actions and because in no wise attempted to be relied upon or asserted by plaintiff.

Plaintiff, therefore, not defendant, is entitled to judgment and for the damages as claimed and shown. *Hess Bros. v. Great Northern P. Co.* 175 Wis. 465, 470, 185 N. W. 542.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff for its damages as shown.