## PATCH v. SOLAR CORPORATION.

No. 8754.

Circuit Court of Appeals, Seventh Circuit.

May 29, 1945.

Rehearing Denied June 22, 1945.

G. A. Youngquist and Andrew E. Carlsen, both of Minneapolis, Minn., (F. W. Thomas and Fowler, Youngquist, Furber, Taney & Johnson, all of Minneapolis, Minn., of counsel), for appellant.

Thomas M. McCabe and Arthur M. Clure, both of Duluth, Minn. (McCabe, Gruber & Clure, of Duluth, Minn., of counsel), for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff is the owner of United States patent No. 1,964,440, covering what is known as the "link" transmission used in the manufacture of washing machines. On June 19, 1937, the plaintiff entered into an exclusive license agreement with Beam Manufacturing Company, authorizing Beam to use the patent on machines manufactured and sold to chain stores, mail order houses and rubber tire companies. By the terms of the license agreement, the licensee was to pay to the plaintiff a royalty of 20 cents for each transmission manufactured and sold, and after January 1, 1941, the plaintiff could cancel the contract on sixty days' notice if in any calendar year immediately preceding the giving of such notice, the licensee shall not have paid royalties of at least $5,000 to the plaintiff.

Beam loaned the plaintiff $3,000 to enable him to defend his title to the patent, and spent over $100,000 in developing and promoting the plaintiff's patent as an exclusive feature on the washing machines that Beam manufactured.

Beam began the manufacture of washing machines in 1938 and continued until May 15, 1942. During this period, Beam paid the plaintiff $17,256.23 in excess of the minimum royalties provided for by the agreement. In 1942, Beam paid royalties of 20 cents per unit which amounted to $3,902.40 by May 15, 1942. In March, 1942, the War Production Board of the United States Government issued an order prohibiting the manufacture of washing machines, and none were manufactured after May 15, 1942.

On March 29, 1943, the plaintiff served on Beam a notice of cancellation of the contract as to the exclusive license for failure to pay the minimum requirement of $5,000 in royalties for the year 1942. Beam denied the right of the plaintiff to cancel the contract. Within a month after the notice of cancellation had expired, the plaintiff entered into a nonexclusive license agreement with Zenith Machine Company to make and sell the transmissions under the patent. In 1943 Beam sold and assigned all rights under the license to the defendant, Solar Corporation.

The plaintiff then sued Solar Corporation, praying for a declaratory judgment that the exclusive feature of the license was cancelled, terminated, and of no effect, and that the defendant be enjoined from manufacturing and selling the patent of the transmission under the license, and for general relief. The defendant answered and filed a counterclaim, praying that the exclusive license be declared in force subject to the payment of royalties after the government ban on the manufacture of washing machines was lifted. Both parties moved for summary judgment.

The District Court granted the plaintiff's motion and entered judgment that the exclusive feature of the license was terminated on or about March 29, 1943, the date on which plaintiff had served notice of cancellation, and that the defendant had no rights under the license after that date. The court dismissed the counterclaim on its merits and enjoined the defendant from ever exercising or claiming to be entitled to exercise any rights under the exclusive feature of the license. The defendant appealed from this judgment.

The defendant argues here that the contract was frustrated and that defendant therefore was relieved of performance during such time as the ban on the manufacture of washing machines continued. The

District Court took the view that the contract was cancelled by its terms unless the defendant chose to pay the minimum royalty of $5,000 per year, which payment was not prohibited, and which would have kept the license alive. That seems to us a harsh and unrealistic view of the situation. The very essence of the license agreement was that the patented transmission to be used in the manufacture of the washing machines was to be available to the defendant. That is what the parties contracted about. That is why the defendant's assignor advanced $3,000 to the plaintiff to enable him to establish his title to the patent. That is why the defendant's assignor spent $100,000 in advertising and promoting the patent as a special feature on the washing machines to be manufactured.

In 1937, when defendant's assignor entered into the contract, neither party contemplated a war in which the United States would become involved. Certainly they did not contemplate a ban by the federal government upon the manufacture of washing machines. We had had no such experience in any previous wars. Consequently the license agreement contained no provisions designed to meet such an unforeseen contingency.

It seems clear to us that the parties contracted for the continued use of the patented transmission in the manufacture of washing machines, and that neither party was to blame for the suspension and ban of that use. The discontinuance of that use was the result of the overpowering authority of the federal government. In such a case, neither party was bound to the performance of the contract. Indeed, neither party could perform it. The performance of the contract was frustrated. Under such circumstances, the law implies a condition relieving both parties of performance. Such seems to be the well-settled law both of this country and of England.

The rule is stated by the Supreme Court in Texas Co. v. Hogarth Shipping Co., 256 U.S. 619, 41 S.Ct. 612, 614, 65 L.Ed. 1123 as follows: "It long has been settled in the English courts and in those of this country, federal and state, that where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its

continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without the default of either party the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing it. * * * "

The rule is stated thus in Restatement of the Law of Contracts, Section 288: "Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears. * * * The rule stated in the Section is applicable, however, though literal performance is still possible, and though that performance would be as beneficial to one of the parties as if the expected object of the contract were not frustrated. * * * " Krell v. Henry, 2 K.B. 740; Alfred Marks Realty Co. v. Hotel Hermitage Co., 170 App.Div. 484, 156 N.Y.S. 179; Brown v. Oshiro, 58 Cal. App.2d 190, 136 P.2d 29; Alfred Marks Realty Co. v. Churchills, 90 Misc. 370, 153 N.Y.S. 264; Ask Mr. Foster Travel Service, Inc. v. Tauck Tours, Inc., 181 Misc. 91, 43 N.Y.S.2d 674; Parrish v. Stratton Cripple Creek Mining & Development Co., 10 Cir., 116 F.2d 207; La Cumbre Golf & Country Club v. Santa Barbara Hotel Co., 205 Cal. 422, 271 P. 476; Fritzler v. Robinson, 70 Iowa 500, 31 N.W. 61; Carr v. Whitebreast Fuel Co., 88 Iowa 136, 55 N.W. 205; Virginia Iron, Coal & Coke Co. v. Graham, 124 Va. 692, 98 S.E. 659. The whole of the contract was frustrated and the remedy of cancellation provided in the contract was not available. In re Kramer & Uchitelle, Inc. (Eddington Fabrics Corporation), 288 N.Y. 467, 43 N.E.2d 493, 141 A.L.R. 1497; Mutual Benefit Life Insurance Co. v. Henrietta Hillyard, 37 N.J.L. 444, 18 Am.Rep. 741.

Whether you call it impossibility of performance or frustration, the result is the same. In either event the court will imply a condition excusing both parties from performance, and the contract may be wholly dissolved or operation under the contract suspended, depending upon the facts of the particular case.

The question then arises, if the contract was frustrated, was it wholly dissolved or suspended only for the period of the ban on the manufacture of washing machines? The rule in such case is laid down in Williston on Contracts, Volume VI, Section 1957, page 5490, as follows: "* * * If the impossibility persists for a length of time sufficient to go to the essence of the contract (and only in that case) the temporary non-performance on one side will justify the other party in rescinding the contract altogether. * * *"

And in the case of Mutual Benefit Life Insurance Co. v. Henrietta Hillyard, supra, the court said: "The tendency of adjudication is to preserve and not to destroy pre-existing contracts. Where performance can be had, without contravening the laws of war, the existence of the contract is not imperiled, and even if performance is impossible the contract may still, where partly executed, be preserved by engrafting necessary qualifications upon it, or suspending its impossible provisions, if made so by the act of the law. If the contract * * * can be saved while the war lasts, it should be. * * *" See Hess Bros. v. Great Northern Rail Co., 175 Wis. 465, 468, 185 N.W. 542; Kinzer Construction Company v. State, Ct.Cl., 125 N.Y.S. 46.

We do not think that the impossibility of performance has persisted, or will persist, long enough to frustrate entirely the object the parties had when they entered into the contract. In any event, the plaintiff cannot use or give a license to any one else to use the patented device until the government lifts the ban. The defendant is as ready to use the patent as any other licensee to whom the plaintiff could make it available after the ban is lifted. The plaintiff is not being imposed upon by holding him to his contract with the defendant. When the government ban is lifted, the patented device will be eligible for use again. The defendant had contracted for the use of the "link" transmission for the life of the patent, which had fourteen years to run when the defendant's assignor entered into the license in 1937. Whatever within the exclusive license is carved out of the useful life of that patent by the War Production Board's restrictions leaves the plaintiff with no more to contract for than the defendant had already contracted for. The defendant and its assignor have spent large sums of money in helping the plaintiff defend his title to the patent and in promoting and advertising the use of the patented device. Certainly the plaintiff should not be permitted to cancel out the defendant and enter into a contract with Zenith Machine Company or anyone else in view of the faithful performance of the agreement made by the defendant and its assignor until they were prevented by the federal government from manufacturing washing machines.

Each case must stand upon its own facts, and the facts in this case are so clearly in favor of the denial of the right of the plaintiff to cancel the contract, and of giving to the defendant the right to proceed when the ban is lifted—which in the light of recent events might not be a great deal longer[1]—that we are of the opinion that the District Court erred in sustaining the motion of the plaintiff for summary judgment and cancelling the contract. Furthermore, the District Court should have sustained the motion of the defendant for summary judgment on the counterclaim and granted its prayer for relief.

The judgment of the District Court is reversed with directions to proceed in accordance with this opinion.

---

[1] The Chicago Sun, edition of May 22, 1945, carried the story that the WPB ban on the manufacture of washing machines is partially lifted.